**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RAMIREZ, et al.<br><br>    Plaintiff,<br><br>v.<br><br>CINTAS CORPORATION,<br><br>    Defendant.<br>_____/ | No. C 04-00281 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION OF DEFENDANT CINTAS CORPORATION TO DISMISS CLAIMS OF PLAINTIFF JAMES MORGAN OR, IN THE ALTERNATIVE, STAY HIS CLAIMS AND COMPEL ARBITRATION.** |

## INTRODUCTION

This matter comes before the Court upon consideration of Cintas Corporation's ("Cintas") motion to dismiss the claims of plaintiff James Morgan ("Morgan") or, in the alternative, to compel arbitration and stay Morgan's claims. Having considered the parties' pleadings, relevant legal authority, having had the benefit of oral argument, and good cause appearing, the Court GRANTS the motion to compel arbitration on the conditions set forth herein and HEREBY STAYS this action as to Plaintiff Morgan. The Court DENIES Cintas' motion to the extent it seeks to dismiss Morgan's claims.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Morgan was employed by Cintas as a driver, a position also known as a Sales Service Representative, in San Leandro, California from approximately December 27, 1999 to March 26, 2004. (Fourth Am. Compl., ¶¶ 14, 33.) Morgan signed two versions of Cintas' employment agreements, a 1999 Version and a 2003 Version ("the 2003 Employment Agreement"), each of which contained an arbitration clause. It is the arbitration clause in the 2003 Employment Agreement that is pertinent to this motion (hereinafter "the Arbitration Clause"). Morgan's 2003 Employment Agreement is witnessed by an "Employer Witness" as well as an "Employee Witness." Morgan's witness is Ms. Hilary Toyryla, who is Cintas' Human Resources Manager. (Declaration of Hilary Toyryla ("Toyryla Decl."), ¶ 1.)

Cintas' 2003 Employment Agreement is six pages long. (Toyryla Decl., Ex. B.) The Arbitration Clause is set forth on pages four and five of the 2003 Employment Agreement and is in the same type size and font as other provisions of that document. (*See id.*)

The Arbitration Clause provides as follows:

> 8. EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES.
>
> Should any dispute or difference arise between Employee and Employer concerning whether either party at any time violated any duty, right, law, regulation, public policy, or provision of this [Employment] Agreement, the parties will confer and attempt in good faith to resolve promptly such dispute or difference. *The rights and claims of Employer covered by this Section 8, including the arbitration provisions below, include Employer's claims for damages, as well as reasonable costs and attorneys' fees, caused by Employee's violation of any provision of this [Employment] Agreement or any law, regulation, or public policy.* The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer, such as rights or claims arising under the Age Discrimination in Employment Act, as amended, Title VII of the Civil Rights Act of 1965, as amended (including amendments contained in the Civil Rights Act of 1991), the Americans with Disabilities Act, 42 U.S.C. § 1981, the Fair Labor Standards Act, the Employee Retirement Income Security Act, state anti-discrimination statutes, other state or local laws regarding employment, common law theories such as breach of express or implied contract, wrongful discharge defamation, and negligent or intentional infliction of emotional distress. *Excluded from the arbitration provisions below in this Section 8 are all unemployment benefits claims, workers' compensation claims, claims for a declaratory judgment or injunctive*

> *relief concerning any provision of Section 4 of this [Employment] Agreement*, and claims not lawfully subject to arbitration, including charges or complaints filed with an administrative agency (but not litigation connected with any such charge or complaint).
>
> If any dispute or difference remains unresolved after the parties have conferred in good faith, either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration to be held in the county and state where Employee currently works for Employer or most recently worked for Employer. Any such request for arbitration must be submitted within one year of the date when the dispute or difference first arose or within one year of when the Employee's employment ends, whichever occurs first, unless a party claims a violation of a specific statute having its own specific statute of limitations, in which event that statutory time limit will apply. *Arbitration under this [Employment] Agreement will be conducted in accordance with the AAA's National Rules for Resolution of Employment Disputes, except if such AAA rules are contrary to applicable state or federal law, applicable law shall govern.*
>
> In any arbitration proceeding, the arbitrator will apply the terms of this [Employment] Agreement as written, the Federal Arbitration Act, and other relevant federal and state laws, including time limits on claims. The parties will have the right to conduct civil discovery and bring motions, as provided by the Federal Rules of Civil Procedure and enforced by the Arbitrator. The arbitrator also will have the authority to award either party appropriate relief, including damages, costs and attorney's fees, as available under relevant laws. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law.
>
> Except for worker's compensation claims, unemployment benefits claims, claims for a declaratory judgment or injunctive relief concerning any provision of Section 4 and claims not lawfully subject to arbitration, the impartial arbitration proceedings, as provided above in this Section 8, will be the exclusive, final and binding method of resolving any and all disputes between Employer and Employee. The arbitrator, however, will have the authority to entertain and decide a motion for reconsideration of the arbitration award.

(Toyryla Decl., Ex. B, at 4-5 (emphasis added).)

In addition to the Arbitration Clause, the 2003 Employment Agreement contains a choice of law provision, which states that the 2003 Employment Agreement shall be "**INTERPRETED, GOVERNED, AND ENFORCED ACCORDING TO THE FEDERAL ARBITRATION ACT, AND THE SUBSTANTIVE LAW (NOT INCLUDING CHOICE OF LAW PRINCIPLES) OF THE STATE OF OHIO.**" (*Id.* at 4 (bold and capitalization as in original).)

The Arbitration Clause differs from prior versions of Cintas' arbitration clauses in that it does not

3

1  expressly provide for a cap on the costs an employee would incur to institute or participate in
2  arbitration proceedings.

3      Morgan has filed a complaint against Cintas based on employment discrimination
4  pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, Title VII, and
5  California's Fair Housing and Discrimination Act and for violations of California Business and
6  Professions Code § 17200, *et seq.*

7      On March 22, 2005, this Court granted in part and denied in part a similar motion filed by
8  Cintas with respect to different plaintiffs and involving different versions of Cintas employment
9  agreements and arbitration clauses (the "March 22, 2005 Order"). Cintas now moves to dismiss
10 Morgan's claims relying on the Arbitration Clause in his 2003 Employment Agreement. In the
11 alternative, Cintas moves to compel arbitration and stay Morgan's claims.

12 **DISCUSSION**

13 **A.    Legal Standards Applicable to Motions to Compel Arbitration.**

14     Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid,
15 irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the
16 revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration
17 agreement relates to a transaction involving interstate commerce, thereby falling under the FAA,
18 the Court's only role is to determine whether a valid arbitration agreement exists and whether the
19 scope of the parties' dispute falls within that agreement. 9 U.S.C. § 4; *Chiron Corp. v. Ortho*
20 *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The parties in this case do not
21 dispute that the claims at issue would fall within the scope of the Arbitration Clause; the only
22 issue is whether the Arbitration Clause is valid and enforceable.

23     The FAA represents the "liberal federal policy favoring arbitration agreements" and "any
24 doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."
25 *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Under the
26 FAA, if the Court determines that the parties have agreed to arbitrate and that agreement has not
27 been honored, and the dispute falls within the scope of that agreement, the Court must order
28 arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

This is true even if the result might be the maintenance of separate proceedings in different fora. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

Where, as here, a litigant sues to enforce statutory claims, that fact alone will not preclude arbitration. The Supreme Court has "recognized that federal statutory claims can be appropriately resolved through arbitration, and [it has] enforced agreements to arbitrate that involve such claims." *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 89 (2000). If statutory claims are involved and an arbitration agreement exists, the agreement should be enforced "unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue," or the litigant cannot effectively vindicate "[his or her] statutory cause of action in the arbitral forum." *Gilmer v. Interstate Johnson/Lane Corp.*, 500 U.S. 20, 26-28 (1991).

Finally, notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion"). Thus, an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Although the Court initially can determine whether a valid agreement to arbitrate exists, disputes over the meaning of specific terms within that agreement are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Prima Paint*, 384 U.S. at 403-04 (holding that a "federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

**B.    Choice of Law.**[1]

The 2003 Employment Agreement provides that it is to be governed by Ohio law. (Toyryla Decl., Ex. B, § 7.) The parties dispute whether this provision is enforceable. The

---

[1] To the extent the choice of law provision may affect matters pertaining to portions of the 2003 Employment Agreement other than the Arbitration Clause, any disputes between the parties about the applicable law should be for the arbitrator to resolve. *See Prima Paint*, 384 U.S. at 403-04.

5

following analysis relates only to the question of what state law should be applied to determine whether the Arbitration Clause is valid.

California law generally favors enforcement of bargained for choice-of-law provisions. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992). When a court is faced with whether it should enforce a choice-of-law provision it must first determine "(1) whether the chosen state has a substantial relationship to the parties or their chosen transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Id.* at 466. If the answer to either of those questions is in the affirmative, "the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Id.* (emphasis in original). If there is a conflict between the designated forum law and California law, a court must determine whether California has "a materially greater interest than the chosen state in the determination of the particular issue." *Id.* (quoting Rest. 2d Conf. of Laws, § 187, subd. (2)).[2] If the answer to this question is in the affirmative, the choice of law provision will not be enforced. *Id.*

It is undisputed that Ohio, as Cintas' principal place of business, has a substantial relationship to the parties and provides a reasonable basis for the choice of Ohio law. *See Nedloyd,* 3 Cal. 4th at 467 (noting that substantial relationship will be met if one of the parties is domiciled in or resides in the chosen state). Morgan claims that applying Ohio law would violate fundamental California policy in three ways. First, Morgan argues that his claims for injunctive relief under California's unfair competition law are not arbitrable. *See Cruz v. Pacificare Health Systems, Inc.*, 30 Cal. 4th 303, 315-17 (2003). Although Morgan did not cite conflicting authority in his brief, at oral argument he claimed that *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150 (2004) created a conflict with California policy. In *Eagle*, the court noted that the Ohio Consumer Sales Practices Act ("CSPA") did not preclude arbitration clauses in sales contracts. *Id.*, 157 Ohio App. 3d at 162. Morgan appears to suggest that the implied holding of

---

[2] Section 187 of the Restatement Second of Conflicts of Law states that a "forum will not refrain from applying the chosen law *merely because this would lead to a different result* than would be obtained under the local law of the state of the otherwise applicable law." Rest. 2d Conf. of Laws, § 187 subd. g (emphasis added).

6

*Eagle* is that claims for injunctive relief on a consumer claim could be arbitrated. *Eagle* makes no such express statement. To the extent that there is a conflict between Ohio law and California policy on the question of whether Section 17200 claims for injunctive relief are arbitrable, the Court concludes that California has a materially greater interest in seeing its law applied because Morgan is a California resident and worked for Cintas in California. As such, the Court will apply California law on this issue. Morgan's claim for injunctive relief under Section 17200 is not subject to this Order and will be severed from his other claims.

Second, Morgan argues that Ohio law violates fundamental California policy as set forth in *Armendariz v. Foundation Health Psychare Servs., Inc.*, 24 Cal. 4th 83 (2000), because under Ohio law Cintas would not be *required* to bear the costs of arbitration. The Court concludes there is no true conflict on this point. Both Ohio and California apply the principle that if a litigant is required to arbitrate statutory claims, he or she must be able to effectively vindicate those rights in the arbitral forum and cannot be required to pay fees that he or she would not be required to pay to litigate those claims in court. *See Armendariz*, 24 Cal. 4th at 93-96; *id.* at 110 ("imposition of substantial forum fees is contrary to public policy"); *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 82-83 (2003) (discussing "centrality of costs" as concern in determining whether statutory rights can be vindicated effectively in arbitration); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 657-58 (6th Cir. 2003) ("If, then, the splitting or sharing of costs of the arbitral forum under a particular arbitration agreement effectively prevents the vindication of a plaintiff's statutory rights, those rights cannot be subject to mandatory arbitration under that agreement."); *cf. Eagle*, 157 Ohio App. 3d at 166-171 (applying case-by-case approach to determine arbitration agreement imposed excessive fees on litigant required to arbitrate statutory claim). Moreover, in this case, there is no conflict because, as set forth in Section D *infra*, the Court interprets the Arbitration Clause to require Cintas to bear all costs of an individual arbitration.

Finally, Morgan relies on *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), to assert that California has a fundamental policy against waiver of classwide arbitration. The Court cannot, however, read the *Discover Bank* case to hold California precludes all waivers of

7

classwide arbitration when the California Supreme Court explicitly stated that it did "not hold all class action waivers are necessarily unconscionable." *Id.* at 162; *see also Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 2005 WL 2249918 at *8 (Cal. App. Sept. 16, 2005) ("classwide arbitration is well accepted under California law as workable and appropriate *in some cases*") (emphasis added) ("hereinafter "*Independent Ass'n*").

Furthermore, it does not appear that there is a conflict between California law and Ohio law on this point. In the *Eagle* case, which like *Discover Bank* involved a consumer claim and potentially small damages, the court refused to enforce an arbitration agreement that expressly precluded class arbitration of claims under the Ohio CSPA on the ground that it would "hinder[] the consumer protection purposes of the CSPA." Unlike the arbitration agreements at issue in the *Discover Bank* and *Eagle* cases, here the Arbitration Clause is silent on the question of class arbitration. It would thus be up to the arbitrator to determine whether or not class arbitrations are permitted under the Arbitration Clause. *See Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 445, 453 (2003); *Discover Bank*, 36 Cal. 4th at 170-71. Because the *Discover Bank* case provides that in some instances waivers of class arbitration may be permitted, the Court cannot conclude that application of Ohio law would necessarily violate a fundamental California policy on this basis.

### C.  The Arbitration Clause Will Not Be Revoked on the Ground That It Is Unconscionable.

Morgan contends that the Arbitration Clause is unconscionable and, therefore, is unenforceable in its entirety. Although the Court could apply Ohio law to the Arbitration Clause, the Court concludes that under either Ohio law or California law, the Arbitration Clause is not unconscionable.

When a party challenges an arbitration agreement on the basis of unconscionability, that party must demonstrate that the arbitration agreement is both procedurally and substantively unconscionable. *See Morrison*, 317 F.3d at 666 (citing *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 143 Ohio App. 3d 708, 718 (2001)); *Armendariz*, 24 Cal. 4th at 114. While under both Ohio and California law, both elements must be present, under California law, a contract may be unenforceable if there is little procedural unconscionability but great substantive

unconscionability, and the reverse is also true. *See Armendariz*, 24 Cal. 4th at 114. As the party challenging the Arbitration Clause on these grounds, Morgan bears the burden to demonstrate the Arbitration Clause is unconscionable. He has not met this burden.

### 1. The Arbitration Clause is not procedurally unconscionable.

To determine whether a contract is procedurally unconscionable under Ohio law, courts should look to such factors as the age, education, business acumen and experience of the parties, which party drafted the agreement, whether the party seeking to avoid arbitration had the benefit of counsel, and other such factors bearing on bargaining position of the parties. *See Morrison*, 317 F.3d at 666; *Eagle,* 157 Ohio App. 3d at 163. Under California law, the procedural element of unconscionability "focuses on the unequal bargaining position and hidden terms common in the context of adhesion contracts." *Independent Ass'n*, 2005 WL 2249918 at 6; *cf. Armendariz*, 24 Cal. 4th at 114 (procedural element focuses on "oppression" or "surprise").

Morgan does not dispute the fact that he signed the 2003 Employment Agreement containing the Arbitration Clause, which bears the signature of two witnesses, albeit Morgan's witness is a Cintas employee. (*See* Toyryla Decl., ¶ 1, Ex. B.) Rather, Morgan claims that he does not recall the meeting during which he signed the 2003 Employment Agreement containing the Arbitration Clause. There is no dispute that Cintas drafted the 2003 Employment Agreement. Similarly, there is no suggestion that Morgan was accompanied by counsel when he signed the 2003 Employment Agreement or that Morgan had the opportunity to consult counsel before signing it. Morgan attests that in general he believed that he "had to sign whatever documents or paperwork Cintas managers gave me to sign. I did not believe that I had a choice about whether to sign or not, and I did not believe that I could change any of the words on the documents." (Morgan Decl., ¶ 17; *see also id.* ¶¶ 18-20.)

Most of Morgan's arguments with respect to procedural unconscionability relate to the circumstances surrounding the execution and formation of the 2003 Employment Agreement as a whole, rather than just the Arbitration Clause. Under recent Ninth Circuit authority, any issue relating to the making of the 2003 Employment Agreement as a whole would be a matter for the arbitrator to address. *Nagrampa v. Mailcoups, Inc.*, 401 F.3d 1024, 1028 (9th Cir. 2005); *cf.*

*Guttierez v. Autowest,* Inc., 114 Cal. App. 4th 77, 88 (2003) ("Of course, simply because a provision within a contract of adhesion is not read or understood by the nondrafting party does not justify a refusal to enforce it. The unbargained-for term may only be denied enforcement if it is also *substantively* unreasonable.") (emphasis added). The Sixth Circuit is in accord. *See Burden v. Check Into Cash of Ky.*, 267 F.3d 483, 491 n. 3 (6th Cir. 2001).

Considering the question of procedural unconscionability as to the Arbitration Clause itself, it is located at pages four and five of the six-page 2003 Employment Agreement. The Arbitration Clause also is identified by a capitalized heading "EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES." Thus, it is not hidden within fine print or buried within an otherwise lengthy agreement. Finally, although he did not attend college, Morgan is a high school graduate, and he does not claim that he did not understand the Arbitration Clause. (Morgan Decl., ¶ 3.) The Court considers it beyond dispute that there is a measure of unequal bargaining power between Cintas and Morgan, but that fact alone will not render the Arbitration Clause invalid. *See Gilmer*, 500 U.S. at 33. Considering all of the facts and circumstances set forth above and notwithstanding the inequality of bargaining power between Cintas and Morgan, the Court concludes that Morgan has not met his burden to show that the Arbitration Clause *itself* is procedurally unconscionable.

Moreover, even if the Court were to find that the circumstances surrounding the formation and execution of the Arbitration Clause did render it procedurally unconscionable, the Court concludes the Arbitration Clause is not substantively unconscionable and that any possible procedural unconscionability does not rise to such a level that the Arbitration Clause should not be enforced.

    **2.    The terms of the Arbitration Clause do not render it substantively unconscionable.**

Under Ohio law, to determine if an arbitration agreement is substantively unconscionable, the Court considers whether the terms of the clause are unfair and unreasonable. *Morrison*, 317 F.3d at 666; *Eagle*, 157 Ohio App. 3d at 163 (when evaluating substantive unconscionability, court considers whether terms of contract "commercially reasonable"). Under California law, the

10

concept of substantive unconscionability relates to the actual terms of the arbitration agreement and whether those terms are "overly harsh" or "one-sided." *Armendariz*, 24 Cal. 4th at 114.

Morgan claims the Arbitration Clause is substantively unconscionable on two grounds. First, he argues that the Arbitration Clause lacks mutuality of remedy because the claims that Cintas is most likely to litigate against employees are excluded from arbitration. Morgan also argues that the Arbitration Clause is substantively unconscionable because it effectively prohibits class arbitrations by imposing excessive fees. The Court rejects both of these arguments.

### a. Mutuality.

Morgan argues that the Arbitration Clause lacks mutuality because Cintas is not required to arbitrate claims for declaratory or injunctive relief arising out of a breach of Section 4 of the 2003 Employment Agreement. In *Armendariz,* the California Supreme Court stated that arbitration agreements require a "modicum of bilaterality" to be enforceable. *Armendariz*, 24 Cal. 4th at 117. Although the *Armendariz* court found the agreement in question to be lacking in mutuality, the court recognized that in some cases an employer might be able to demonstrate that business realities required the exclusion of certain types of claims from the arbitration process. *Id.* at 117-18.

Under the Arbitration Clause, Cintas must arbitrate all claims for damages it may bring against its employees. (Toyryla Decl., Ex. B at 4.) Cintas has, however, reserved the right to litigate claims for declaratory or injunctive relief for a breach of Section 4 of the 2003 Employment Agreement, which pertains to such issues as Cintas' confidential and proprietary information, trade secrets and non-competition agreements.[3] When he signed the 2003 Employment Agreement, Morgan agreed and acknowledged that "a breach of any covenant in this Section 4 will cause Employer irreparable injury and damage for which Employer may have no adequate remedy." (Toyrola Decl., Ex. B at 3.)

---

[3] Under the California Arbitration Act, Cintas would not be precluded from instituting a request in court for an injunction, notwithstanding the existence of an arbitration agreement, on the ground that any potential award would be rendered ineffectual without such provisional relief. *See* Cal. Civ. Proc. Code § 1281.8(b).

11

The Court concludes that Cintas has demonstrated that there are reasonable business realities that justify excluding claims for declaratory and injunctive relief from arbitration. Therefore, the Arbitration Clause contains the necessary modicum of bilaterality and is not substantively unconscionable on this basis. Although Morgan raises this argument only under California law, the Court would reach the same conclusion under Ohio law. *See Raasch v. NCR Corp.,* 254 F. Supp. 2d 847, 855 (S.D. Ohio 2003) (finding arbitration agreement to be sufficiently mutual even where it excluded disputes over confidential information, non-compete agreements, and other intellectual property).

### b.    Prohibition on class arbitration.

Morgan also argues that the Arbitration Clause is substantively unconscionable under both Ohio and California because it prohibits class arbitration. Morgan concedes, as he must, that there is no express ban on class arbitration. Rather, he argues that by imposing high costs to proceed by way of class arbitration, the Arbitration Clause effectively prohibits class treatment. Because the Arbitration Clause does not expressly prohibit class arbitration, the question of whether a class arbitration is permitted is a matter for the arbitrator to decide. *See Bazzle,* 539 U.S. at 453; *Discover Bank*, 36 Cal. 4th at 170-71. Accordingly, the Court does not find the Arbitration Clause to be substantively unconscionable on this basis.

### D.    Morgan Has Met His Burden to Show That He Cannot Effectively Vindicate His Statutory Claims on An Individual Basis Under the Arbitration Agreement.

Notwithstanding the conclusion that the Arbitration Clause is not unconscionable, this Court is charged with the responsibility of ensuring that Morgan effectively can vindicate his statutory claims in an arbitral, rather than a judicial, forum. *See Randolph*, 531 U.S. at 90; *Armendariz*, 24 Cal. 4th at 93-96; *Morrison*, 317 F.3d at 658. In *Gilmer*, the Supreme Court made clear that the focus of this question is whether the *cause of action* can be vindicated effectively, not whether a party can proceed on the cause of action in any particular manner. *Gilmer*, 500 U.S. at 28. Thus, the pertinent questions are whether Congress intended to prevent waiver of the judicial forum or whether there is an inherent conflict between the statute at issue and the FAA. *Id.* at 26-27.

Morgan does not contend that there is a legislative intent to preclude waiver of a judicial forum for his Title VII claim, FEHA claim, or the damages and restitution aspect of his Section 17200 claim. Therefore, absent a finding that he cannot effectively vindicate his statutory causes of action in the arbitral forum, the fact that Morgan asserts statutory claims that he *wishes* to pursue by way of class action does not prevent the Court from enforcing the Arbitration Clause. Morgan's only valid challenge to the Arbitration Clause on this point would be that it would be prohibitively expensive for him to arbitrate these claims on an individual basis.

Earlier versions of Cintas' arbitration clauses placed an express cap on the fee an employee would be required to pay to initiate arbitration. In this case, however, to determine what fees an employee would be required to pay to arbitrate his or her claims, one must look to the American Arbitration Association's National Rules for Employment Disputes ("the AAA Employment Rules"). Under the AAA Employment Rules, if the arbitration arises out of an Employer Promulgated Plan, an employee's filing fee is capped at $125. (*See* AAA Employment Rules - Administrative Fee Schedule.)[4] If, however, the arbitration arises out of an Individually Negotiated Employment Agreement or Contract, and even if that contract references or incorporates an Employer Promulgated Plan, the filing fee to initiate arbitration ranges from $750 to $10,000, and an employee also must pay a case service fee ranging from $200 to $4,000, depending upon the size of his or her claim. (*Id.*)

The fact that the Arbitration Clause does not contain an express cap on the amount of fees Morgan would be required to pay to initiate arbitration renders it fundamentally different from the earlier versions of Cintas' arbitration clauses upheld in this Court's March 22, 2005 Order. Nor is it clear, as Cintas argues, that the Arbitration Clause would be considered an Employer Promulgated Plan, capping the fee at $125. Thus, the evidence in the record demonstrates that there is a fifty percent chance Morgan would be required to pay at least $950 to initiate an individual arbitration. That fee alone exceeds any filing fee he was required to institute his lawsuit. Further, Morgan has submitted a declaration outlining his monthly income and expenses and attesting that he could not afford to pay more than a $125 filing fee to arbitrate his claims.

---

[4] Attached as Exhibit 2 to the Declaration of Nina Rabin.

(Morgan Decl., ¶ 15.) Cintas has not rebutted this evidence. Accordingly, the Court concludes that Morgan has met his burden of showing that the Arbitration Clause as drafted effectively precludes him from vindicating his statutory rights on an individual basis.

However, the Court does not find the Arbitration Clause in this case to be permeated with illegality such that it would refuse to enforce the Arbitration Clause. The Court concludes that the only objectionable provision relates to the fees Morgan would be required to pay to arbitrate his claim. Under Ohio law, the question of whether an agreement "is entire or divisible depends generally on the intention of the parties, and this must be ascertained by the ordinary rules of construction." *Morrison*, 317 F.3d at 675 (quoting *Toledo Police Patrolmen's Ass'n v. City of Toledo*, 94 Ohio App. 3d 734, 740 (1994)). Under California law, if the Court can enforce the Arbitration Clause without an unconscionable clause or restrict the application of an unconscionable clause to avoid an unconscionable result, it may do so. *Armendariz*, 24 Cal. 4th at 121-22 (citing Cal. Civ. Code § 1670.5).

The Court concludes that it can restrict the application of the objectionable provision. At best, the Arbitration Clause is ambiguous as to the question of fees because of the reference to the AAA Employment Rules, which contain two different fee schedules. Cintas drafted the Arbitration Clause and the Court shall construe any ambiguity against Cintas. Further, the Arbitration Clause states that if the AAA Employment Rules conflict with applicable federal or state law, the applicable law governs. Under federal and state law, Morgan must be able to effectively vindicate his statutory claims on an individual basis in an arbitral forum. *Randolph*, 531 U.S. at 90; *Armendariz*, 24 Cal. 4th at 93-96; *Morrison*, 317 F.3d at 658. Accordingly, the Court construes the Arbitration Clause to require Cintas to pay all costs associated with an individual arbitration.[5]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Cintas' motion to compel Morgan to arbitrate his claims under Title VII, FEHA, and his claims under Section 17200, except to the

---

[5] The Court expresses no opinion on whether Morgan can proceed on a classwide basis in arbitration; nor does it express an opinion on what fees Morgan might be required to pay if he chooses to file such an arbitration.

extent Morgan he seeks injunctive relief. The Section 17200 claim for injunctive relief is severed from the arbitrable claims. Further, this action is HEREBY STAYED as to Morgan pending completion of an arbitration proceeding within this judicial district. *See* 9 U.S.C. § 4. The Court DENIES Cintas' motion to dismiss to the extent it seeks to dismiss Morgan from this action.[6]

**IT IS SO ORDERED.**

Dated: November 2, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[6] Cintas filed a request for judicial notice, to which Morgan did not object. Because the documents were not necessary to resolution of this motion, Cintas' request is DENIED.